**William E. BROCK, Secretary of the United States Department of Labor, Plaintiff,**

**v.**

**Oscar C. LINDEMANN, et al., Defendants.**

**No. CA 3–84–1814–R.**

United States District Court, N.D. Texas, Dallas Division.

July 1, 1987.

Revised July 25, 1988.

Leslie J. Canfield, William W. Taylor, U.S. Dept. of Labor, Plans Benefits Sec. Div., Washington, D.C., for plaintiff.

G. Scott Damuth, Eric Klein, Jr., J. Christopher Cimalglia, David B. Seybold, L.E. Creel, III, Ronald E. Deutsch, William Chris Wolffarth, Jeffrey H. Abrams, Arthur M. Meyer, Roy A. Herberger, Richard A. Dean, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

BUCHMEYER, District Judge.

This is an ERISA case.[1] It involves the Lee Optical Pension and Profit Sharing Plan ("the Plan").

After a non-jury trial on the merits, judgment was entered against the defendant Theodore Shanbaum for over $1 million, the amount of losses suffered by the Plan as the result of misconduct by Shanbaum.[2] However, both Shanbaum and his former wife, Bernice Shanbaum, are receiving benefit payments under this Plan—and the present Trustee now claims that these payments should, instead, be applied as offsets to the judgment against Theodore Shanbaum.

This opinion holds:

(1) that the "anti-alienation" provisions of ERISA *do not* prevent the Trustee from offsetting the interest of Theodore Shanbaum against the judgment, because it is based upon his knowing participation in the misconduct of the former trustee of the Plan; but

(2) that these "anti-alienation" provisions *do* prevent the Trustee from offsetting the interest of Bernice Shanbaum against the judgment, because it was not entered until after her divorce from Theodore Shanbaum and because there is no evidence that she participated in the misconduct which led to the judgment.

### 1. *The Statutory Framework*

The Employment Retirement Income Security Act ("ERISA" or the "Act") was designed to "protect the interests of participants in employee benefit plans and their beneficiaries" and to "establish standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans ... by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. § 1001(b). To carry out

these purposes, the Act regulates virtually all aspects of qualified employee benefit plans, including reporting and disclosure, 29 U.S.C. §§ 1021–1031; participation and vesting, 29 U.S.C. §§ 1051–1061; funding, 29 U.S.C. §§ 1081–1086; fiduciary responsibility, 29 U.S.C. §§ 1101–1114; and administration and enforcement, 29 U.S.C. §§ 1131–1145.

Specifically, with respect to fiduciaries, the Act not only details the duties imposed upon them, 29 U.S.C. § 1104, it also imposes liability for breach of those duties. 29 U.S.C. § 1109(a). Section 1109(a) provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan and losses to the plan resulting from each such breach ... and shall be subject to other equitable or remedial relief as the court may deem appropriate....

The Secretary of Labor is authorized to enforce this section by bringing a civil action for "appropriate relief under section 1109." 29 U.S.C. § 1132(a)(2). Section 1132 was "designed specifically to provide ... the Secretary ... with broad remedies for redressing or preventing violations" of the Act. Accordingly, it was the intent of Congress "to provide the full range of legal and equitable remedies available in state federal courts." S.Rep. 93–127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News, 4639, 4838, 4871. Consistent with this intent, Congress made "principles developed in the evolution of the law of trusts" applicable to ERISA's fiduciary provisions; "it is expected that courts will interpret the prudent man rule and other fiduciary standards bearing in mind the special nature and purposes ... intended to be effectuated by the Act." S.Rep. 93–127, 93d Cong., 2d Sess.,

---

1. The action was brought by the Secretary of the Department of Labor under Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

2. The defendants Theodore Shanbaum and Henry Klepak were held jointly and severally liable

to the Plan for damages caused to it by their knowing participation with Oscar Lindemann, the former Trustee, in Lindemann's breach of his fiduciary duties to the Plan. The present trustee of the Plan is entitled to enforce this judgment by its terms.

*reprinted in* 1974 U.S.Code Cong. & Admin.News, 4838, 4865.[3] 1 *Scott on Trusts*, § 1, at 1–10 (3d ed. 1967).

Just as the enforcement of ERISA's strict fiduciary duties protects employees' interest in plans covered by the statute, so does the Act's "anti-alienation" provision. 29 U.S.C. § 1056(d)(1) provides:

> Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

■ There are, of course, some exceptions to this broad anti-alienation provision. For example, consistent with its purpose of insuring that plan beneficiaries and their families are protected, the Act permits the transfer of plan benefits to an alternate payee, a "former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. §§ 1056(d)(3)(A). And, although ERISA preempts state law in the area of pensions, 29 U.S.C. § 1144(a), federal courts have created an exception to this anti-alienation provision in areas exclusively within the realm of the police power of the state— e.g., domestic relations law, *American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118 (2d Cir.1979). Thus, notwithstanding § 1056(d)(1), a state may validly permit garnishment of a beneficiary's interest in a plan covered by ERISA in order to satisfy a state court order of divorce or child support. "The exception is premised upon the statute's broad purpose to provide protection for employees and their families, so that intra-familial transfers are not to be viewed in the same light as an involuntary transfer for the benefit of a third-party

creditor." *Tenneco Inc. v. First Virginia Bank*, 698 F.2d 688, 690 (4th Cir.1983). Finally, the Act also permits some revocable voluntary assignments not exceeding ten percent of any benefit payment, 29 U.S.C. § 1056(d)(2), but "a garnishment or levy is not to be considered a voluntary assignment" for the purpose of anti-alienation provision. H.Conf.Rep. 93–1280, 93d Cong., 2d Sess., *reprinted in,* 1974 U.S. Code Cong. & Admin.News, 5038, 5061.[4]

Placed in this statutory framework, the Trustee's attempt to offset the Shanbaum payments under the Plan seems to present a dilemma: the payments to the Shanbaums are not to "be assigned or alienated" under § 1056(d)(1)—but Theodore Shanbaum should be held personally liable" to the Plan, under § 1109(a), for the losses caused by the misconduct of Shanbaum and the former trustee. This compels a separate analysis for Theodore Shanbaum and for his former wife, Bernice Shanbaum.

### 2. *The Interest of Theodore Shanbaum*

■ Under the common law of trusts, a breaching trustee who is liable for a loss resulting from the breach may be compelled "to make good the breach of trust out of his beneficial interest in the trust property." 3 *Scott on Trusts* § 257, at 2201 (3d ed. 1967). Where the trust in question contains a spendthrift provision, offset depends on the intent of the settlor in creating the spendthrift provision and "whether in view of the circumstances the Settlor would have desired to protect the trustee-beneficiary, not only as against the claims of ordinary creditors, but also against the claims of the other benefi-

---

3. *See also* Statement of Hon. Harrison A. Williams, Jr., 120 Cong.Rec. S 15736, *reprinted in* 1974 U.S.Code Cong., & Admin.News, 5177, 5186 ("[T]he legislation imposes strict fiduciary obligations on those who have discretion or responsibility respecting the management, handling, or disposition of pension or welfare plan assets. The objectives of these provisions are to make applicable the law of trusts ... and to provide effective remedies for breaches of trust.")

4. In addition to the exception permitted with respect to family matters, at least one court has permitted another narrow exception to § 1056(d)(1). In *St. Paul Fire and Marine Insurance Co. v. Cox,* 752 F.2d 550 (11th Cir.1985), the Eleventh Circuit held that the anti-alienation provision did not prevent the offset of an employee's interest in an ERISA plan where the employee had engaged in criminal misconduct which damaged his employer. However, on similar facts, the Second Circuit refused to adopt that reasoning in *Ellis National Bank v. Irving Trust Co.,* 786 F.2d 466 (2d Cir.1986).

ciaries for breach of trust." 3 *Scott on Trust* § 257.1, at 2204–05 (3d ed. 1967).

■ It is clear that the anti-alienation provision of the Plan is part of a comprehensive scheme designed to protect the interests of employees in their benefit plans. Specifically, § 1056(d)(1) accomplishes this by protecting these interests from the claims of ordinary creditors. However that same comprehensive scheme also creates strict fiduciary duties designed to be enforced through the use of broad and flexible remedial measures. While the practical effect of these provisions may appear to conflict, their purposes do not. This Court can only conclude that the offset remedy is not only consistent with ERISA's purpose of providing flexible and effective remedies for fiduciary breaches, but is also among the traditional trust principles that Congress intended to be implemented in enforcing the Act.

Only one other court has addressed this precise issue. In *Crawford v. La Boucherie Bernard Ltd.*, 815 F.2d 117 (D.C.Cir. 1987), the D.C. Circuit found that offset of a beneficiary's interest in a plan would be permissible where that beneficiary was a fiduciary who had breached his duty to the plan. The court held:

> [T]he purpose of ERISA's anti-alienation provision—to protect plan beneficiaries by ensuring that plan assets are used only for payment of benefits— would be undermined, not advanced by an interpretation that prohibited offset under these circumstances. The broad equitable remedies authorized by ERISA against plan assets to the detriment of beneficiaries can best—perhaps only—be effectuated by her applying the traditional trust remedy of offset (815 F.2d at 122.)

■ This Court agrees with *Crawford*. Moreover, it finds that the equitable offset remedy is available against a nonfiduciary who is jointly and severally liable for the knowing participation in a fiduciary's breach. Such a finding is not only consistent with traditional trust principles, *see Brock v. Gerace*, 635 F.Supp. 563 (D.N.J. 1986); *Donovan v. Schmoutey*, 592

F.Supp. 1361, 1397 (D.Nev.1984); *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629 (W.D.Wis.1979), it is also consistent with ERISA's broad grant of remedial powers.

Here, Theodore Shanbaum was found to be jointly and severally liable to the Plan for losses it suffered because of his knowing participation in a breach of fiduciary duty to the Plan. And, judgment was entered ordering Shanbaum to pay restitution to the Plan. Under these circumstances, § 1056(d)(1) does not prevent the current Trustee from offsetting the payments due to Theodore Shanbaum against his liability to the Plan under the judgment.

### 3. *The Interest of Bernice Shanbaum*

■ However, the application of these principles to the Trustee's attempt to offset the payments due to Bernice Shanbaum— against the liability of her former husband —requires a different result.

In February of 1983, the 303rd District Court of Texas entered judgment terminating the marriage of Bernice Shanbaum and Theodore Shanbaum. Under the divorce decree, Mrs. Shanbaum was awarded fifty percent of the community interest in the Plan, including fifty percent of the benefits to be received or distributed to Mr. Shanbaum from the plan.

The Trustee argues that Bernice Shanbaum's interest in the plan is held "only as a result of her marriage to and subsequent divorce from Theodore Shanbaum. As a result, her position in this matter can rise no higher than his." Reply Brief, at 5. This position is not correct.

### A. State Law

In Texas, the income from the wages one spouse receives during the marriage is community property. Tex.Fam.Code Ann. § 5.01 (Vernon 1975); *see Meshwert v. Meshwert*, 543 S.W.2d 877 (Tex.Civ.App.— Beaumont 1976), *affirmed*, 549 S.W.2d 383 (Tex.1977). Similarly, delayed wages in the form of employee retirement benefits are also community property. Tex.Fam.Code Ann. § 5.01 (Vernon 1975); *see Busby v. Busby*, 457 S.W.2d 551 (Tex.1970); *Wilson*

*v. Wilson*, 507 S.W.2d 916, 917 (Tex.Civ. App.—Houston [1st Dist.] 1974). Upon dissolution of the marriage, the community estate is dissolved and thereafter vests as separate property in the former spouses.

Under Texas law, a person's separate property may not be sued to satisfy a post-divorce judgment against the person's former spouse when the person was not a party to the action giving rise to the judgment. *Stewart Title v. Huddleston*, 598 S.W.2d 321 (Tex.Civ.App.—San Antonio 1980, writ r.f.e.). Indeed, the separate property cannot even be used to satisfy a community debt reduced to judgment after the divorce when the former spouse neither participated nor acquiesced in, had knowledge of, or otherwise benefited from the debt. *Miller v. City National Bank*, 594 S.W.2d 823 (Tex.Civ.App.—Waco 1980).

The filing of this ERISA suit took place well after the end of the Shanbaum marriage. Indeed, the judgment was not entered against Theodore Shanbaum until *four years* after the divorce. Bernice Shanbaum was not named as a party, nor was there any evidence that she participated in the misconduct which damaged the Plan. Therefore, to permit the Trustee to offset the payments due to Bernice Shanbaum against the post-divorce judgment against Theodore Shanbaum would conflict with Texas law.

### B. ERISA

The result is the same under ERISA. Bernice Shanbaum claims—and the Trustee does not dispute—that the decree is "a qualified domestic relations order" under the Act. 29 U.S.C. § 1056(d)(3)(B). As such, the decree validly transferred to Bernice Shanbaum her interest in the plan. 29 U.S.C. § 1056(d)(3)(A). It also protects her as an "alternate payee" to the extent she "shall be considered for purposes of *any* provision of this chapter a beneficiary under the plan." 29 U.S.C. §§ 1056(d)(3)(J), 1056(d)(3)(K) (emphasis added). Accordingly, her interest in the plan is protected by the anti-alienation provision of § 1056(d)(1).

Nevertheless, the Trustee argues that equitable principles require this Court to offset the interest of Bernice Shanbaum to satisfy her former husband's debt. This is not correct; that equity permits offset only against a fiduciary—or one who knowingly participates with the fiduciary—to redress a breach of duty to the plan. Here, there is no evidence that Bernice Shanbaum participated in the former trustee's breach of his fiduciary duties. Accordingly, Bernice Shanbaum's interest is fully protected against offset.

For these reasons, the Trustee is entitled to offset the payments due under the Plan to Theodore Shanbaum—but not the payments due to his former wife, Bernice Shanbaum—against the liability of Theodore Shanbaum under the judgment.