Henry CRAWFORD, et al.

v.

LA BOUCHERIE BERNARD LTD., et al., Bernard H. Goldstein, et al., Appellants.

Raymond J. DONOVAN, Secretary, U.S. Department of Labor

v.

Bernard H. GOLDSTEIN, et al., Appellants, Roy A. Schotland, Esq., Receiver, District Hotel Supply, Inc., Profit Sharing Plan, Henry Crawford, et al., Intervenors.

Henry CRAWFORD, et al.

v.

LA BOUCHERIE BERNARD LTD., et al., Bernard H. Goldstein, et al., Appellants.

Raymond J. DONOVAN, Secretary, U.S. Department of Labor

v.

Bernard H. GOLDSTEIN, et al., Appellants, Roy A. Schotland, Esq., Receiver, District Hotel Supply, Inc., Profit Sharing Plan.

Henry CRAWFORD, et al.

v.

LA BOUCHERIE BERNARD LTD., et al., Bernard H. Goldstein, et al., Appellants.

Raymond J. DONOVAN, Secretary, U.S. Department of Labor, et al.

v.

Bernard H. GOLDSTEIN, et al., Appellants, Roy A. Schotland, Esq., Receiver, District Hotel Supply, Inc., Profit Sharing Plan.

Nos. 84–5627, 84–5628, 84–5770, 84–5771, 84–5946 and 84–5947.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1986.

Decided March 27, 1987.

As Amended March 27, 1987.

Daniel B. Blake, III, for appellants in Nos. 84–5627, 84–5628, 84–5770, 84–5771, 84–5946 and 84–5947.

William W. Osborne, Jr., with whom John R. Mooney, Jonathan G. Axelrod, and James S. Ray, Washington, D.C., were on the brief for appellees, Crawford, et al. in Nos. 84–5627, 84–5628, 84–5946 and 84–5947.

Ellen L. Beard, Attorney, Dept. of Labor, with whom Thomas L. Holzman, Dept. of Labor, Washington, D.C., was on the brief for appellee, Secretary of Labor in Nos. 84–5627, 84–5628, 84–5770, 84–5771, 84–5946 and 84–5947.

Before MIKVA and BORK, Circuit Judges, and HAROLD H. GREENE,* District Judge.

Opinion for the Court filed by District Judge GREENE.

HAROLD H. GREENE, District Judge:

This case presents primarily the question whether, notwithstanding the so-called anti-alienation provisions of the Employee Retirement Income Security Act of 1974 (ERISA), the Act authorizes a court to offset a party's interest in a plan covered by that statute against a judgment based on the party's breaches of duty to the same plan. For the reasons discussed below, we conclude that ERISA does allow such an offset.

---

* Of the United States District Court for the District of Columbia, sitting by designation pursu-

## I

Appellant Bernard Goldstein, defendant below, was chief executive officer and majority owner of two corporations, La Boucherie Bernard, Ltd., and District Hotel Supply, Inc. Bernard Goldstein was also a participant in and trustee of a profit-sharing plan established for the corporation's employees, the District Hotel Supply, Inc., Profit Sharing Plan. Appellant Jack Goldstein, Bernard's brother, also a defendant below, was an employee of both corporations and a participant and trustee of the Plan.

In 1978, Bernard Goldstein, along with his wife and two children, established a partnership called BRIL Associates for the purpose of purchasing real estate in Virginia on which to build a new company headquarters. On December 14 of that year, BRIL bought real estate in Fairfax County, Virginia, from the Shell Oil Company, the purchase being financed by a first mortgage from Madison National Bank and a second mortgage from Shell Oil.

During the next three years a series of transactions occurred involving the Goldsteins' profit sharing plan and the BRIL property in Fairfax. Details aside, the Goldsteins ultimately transferred some $461,000 in Plan assets to BRIL or for BRIL's benefit. The Goldsteins never repaid this money to the Plan; they made no agreement to repay the money; and they made no provision to pay interest on the amount so "borrowed."

Between May 1980 and June 1982, the Goldsteins also transferred $163,000 from the Plan to La Boucherie Bernard, a corporation that was predominantly owned by Bernard Goldstein and that was also a Plan sponsor. Additionally, they used Plan assets within that same time period to satisfy a tax obligation of La Boucherie Bernard; declared a contribution to the Plan which was never paid; and engaged in other transactions in violation of their fiduciary duties under ERISA.

ant to 28 U.S.C. § 292(a).

Suit was brought by fifteen participants in the Plan,[1] including appellee Crawford, and on January 20, 1984, the District Court granted summary judgment in favor of the Plan against the Goldsteins, upon a finding that the latter had breached their fiduciary duties as Trustees of the Plan and had violated ERISA's prohibited transactions provisions by misusing Plan assets for their own benefit and that of others. *See* ERISA §§ 404(a)(1)(A), (B), and (C), 406(a)(1)(D), and 406(b)(1) and (2), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (C), 1106(a)(1)(D), and 1106(b)(1) and (2) (1982).

The judgment thus entered against Bernard and Jack Goldstein jointly and severally was for $976,822.38, and the judgment against Bernard Goldstein alone for $20,999. On July 6, 1984, when the Goldsteins had failed to pay any of the judgments, the court granted the motion of the Plan participants for equitable enforcement of these judgments, and it ordered the Goldsteins' own beneficial interests in the Plan to be offset and applied to their judgment debts. It is the July 6, 1984 order that is before us on this appeal and, as noted, the issue [2] here is whether the court had the power to order such an offset.

## II

ERISA is a comprehensive remedial statute enacted to:

> protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the federal courts.

ERISA § 2(b), 29 U.S.C. § 1001(b).

Under section 409(a) of the Act, 29 U.S.C. § 1109(a), a person who breaches his fiduciary duties to a pension plan "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate." Section 502(a) of the statute, 29 U.S.C. § 1132(a), in turn authorizes the Secretary of Labor and any plan participant, beneficiary, or fiduciary to bring a civil action "for appropriate relief under section [409]" or to obtain an injunction or "other appropriate equitable relief" to redress a fiduciary violation.

As may be deduced from this language, where a party has breached his fiduciary duty, the courts have broad authority under the statute to fashion remedies for redressing any breach and for protecting the interests of participants and beneficiaries. *See, e.g., Donovan v. Mazzola,* 716 F.2d 1226, 1235 (9th Cir.1983) (upholding order requiring appellants to post $1 million bond). The legislative history of section 409(a) further underlines what is apparent from the statutory language. Thus, the Report of the Senate Committee on Labor and Public Welfare states that:

---

**1.** These Plan participants were employees or former employees of Boucherie Bernard.

**2.** The Goldsteins also argue somewhat mysteriously that the order was a confiscation of their property in violation of the Fifth Amendment to the United States Constitution, but no authority is cited for this proposition, and it entirely lacks merit. Moreover, since the Goldsteins did not file a timely notice of appeal from the underlying ERISA judgment, we lack jurisdiction to review the merits of the breach of duty issues and will consider only the issue of offset. The District Court's order granting summary judgment to plaintiffs under ERISA, and certifying that judgment as final under Fed.R.Civ.P. 54(b), was issued on January 20, 1984. The corollary judgment was entered on the court's docket sheet on April 10, 1984. The first notice of appeal was not filed until September 4, 1984, nearly five months later.

Under Fed.R.App.P. 4(a)(1) and 28 U.S.C. § 2107, the notice of appeal in a civil case such as this must be filed within 60 days after entry of the judgment or order appealed from. While the District Court may extend this filing time for up to 30 days, the Goldsteins never moved for an extension of time, and their notice of appeal was thus late by almost three months. *See Browder v. Director, Illinois Dept. of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978); *Moorer v. Griffin,* 575 F.2d 87 (6th Cir.1978). Finally, it is clear that, contrary to the Goldsteins' argument, the ERISA judgments were not interlocutory but final since, as the Goldsteins concede in their brief (at 13), the District Court entered final judgment under Rule 54(b).

The enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations.... *The intent of the committee is to provide the full range of legal and equitable remedies available in both state and federal courts....*

S.Rep. No. 93–127, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4838, 4871 (emphasis added). Similarly, Senator Harrison A. Williams, Chairman of the Committee, made clear the congressional direction to the federal courts to draw on principles of traditional trust law, stating that:

The objectives of these provisions are to make applicable the law of trusts; ... to establish uniform fiduciary standards to prevent transactions which dissipate or endanger plan assets; and to provide effective remedies for breaches of trust.

120 Cong.Rec. S–15737, Aug. 22, 1974, *reprinted in* 1974 U.S.Code Cong. & Admin. News 5177, 5186; *see also Eaves v. Penn,* 587 F.2d 453, 462 (10th Cir.1978).

Trust law contemplates the use of broad and flexible equitable remedies as means for dealing with breaches of fiduciary duty, and it imposes the obligation upon the courts to use the remedy that is most advantageous to the participants and that will most closely effectuate the purposes of the trust. *Id.*

The District Court's order in this case to offset the Goldsteins' interests in the Plan in satisfaction of their judgment debt is fully consistent with these principles. When plaintiffs requested such an order, their final judgment against the Goldsteins had already remained unpaid after some six months. In the absence of an offset order, the Receiver of the Plan might well have been obligated to include the Goldsteins in a distribution of Plan assets to all eligible participants, in accordance with the governing Plan documents.[3] Since the

Goldsteins held more than sixty per cent of the beneficial interest in the Plan, such a distribution would in effect have further rewarded them for their wrongdoing, and innocent Plan beneficiaries would still not have received their due.

Rather than to allow such an inequity, traditional trust law would clearly support the forfeiture of the beneficial interest of a breaching fiduciary in order to offset the losses suffered by the trust. As one authority on trusts states:

If a beneficiary is also a trustee of his own trust, acting for himself and others, it is elementary that as trustee he owes the beneficiaries a duty to perform the trust and not to violate it, and that if he steals trust funds, or causes damage to the trust estate in other ways, his share under the trust ... will be taken by the court in order to make good the loss.

Bogert, *Trusts and Trustees* § 191, at 484 (2d ed. 1979). Professor Scott has reached the same conclusion, stating that:

[i]f the trustee is also one of the beneficiaries ... the other beneficiaries can compel him to make good the breach of trust out of his beneficial interest in the trust property. The defaulting trustee-beneficiary is not entitled to receive his share of the trust property until he has made good the loss which resulted from his breach of trust. The other beneficiaries can insist that his interest be impounded to make good the loss; they are entitled to a charge upon his interest to indemnify them for the loss.

III *Scott on Trusts* § 257, at 2201 (3d ed. 1967).

In short, the offset remedy adopted by the District Court is not only consistent with ERISA's purpose of providing effective remedies for fiduciary breaches, but it is also among the traditional trust principles that Congress intended to be incorporated into the law of employee benefit plans under ERISA.

---

**3.** Such a distribution might have been called for, for example, if the corporate assets had been sold to another corporation. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), re-

quires a fiduciary to act in accordance with the documents and instruments governing the plan to the extent that they are consistent with the provisions of the Act.

## III

The Goldsteins argue, however, that ERISA's anti-alienation provision calls for a different result. This provision, section 206(d)(1) of the Act, 29 U.S.C. § 1056(d)(1), mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Moreover, an identical provision in section 401(a)(13) of the Internal Revenue Code of 1954, 26 U.S.C. § 401(a)(13), has been interpreted by the Treasury Department to prohibit not only voluntary assignment and alienation, but also attachment, garnishment, or levy by operation of law. 26 C.F.R. §§ 1.401(a)–13(b)(1). Indeed, the Secretary of Labor has recognized that most courts have construed section 206(d)(1) to prohibit the garnishment of pension benefits by creditors, and that the legislative history of the statute supports that interpretation. *See, e.g., General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir. 1980) (section 206(d)(1) includes "all encroachments, both voluntary and involuntary").

The anti-alienation rule has not been regarded as immutable, however. For example, various decisions have implied a limited exception to permit the garnishment of plan benefits in order to satisfy family support and community property obligations contained in divorced decrees. *See, e.g., American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118 (2d Cir.1979), and *Stone v. Stone,* 450 F.Supp. 919 (N.D.Cal. 1978), *aff'd,* 632 F.2d 740 (9th Cir.1980), *cert. denied sub nom. Seafarers International Union, Pacific District—Pacific Maritime Association Pension Plan v. Stone,* 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981).[4]

Similarly, the garnishment of an employee's pension fund interest has been permitted to satisfy liabilities arising from his criminal misconduct toward his employer. *St. Paul Fire and Marine Insurance Co. v. Cox,* 752 F.2d 550 (11th Cir.1985). In that case, the Eleventh Circuit expressly rejected an argument that, since the anti-alienation provision of ERISA prevented assignment of plan funds to individual claimants, they also prevented the fund from garnishing defendant's interest. Said the court: "[t]here is no reason to conclude that ERISA requires the abrogation of the equitable principle that a wrongdoer should not benefit from his misdeeds," and that "[o]f prime importance to the courts in considering implied exceptions to the non-alienation provisions have been the congressional objectives behind ERISA, and the effect of the proposed exceptions on those goals." *Id.* at 552 (citing *American Telephone & Telegraph v. Merry, supra,* 592 F.2d at 120–25; *Cartledge v. Miller,* 457 F.Supp. 1146, 1154–56 (S.D.N.Y.1978)).

We agree with the Eleventh Circuit. ERISA was established to protect "the continued well-being and security of millions of employees and their dependents" by providing "minimum standards ... assuring the equitable character of [pension fund] plans and their financial soundness." ERISA § 2(a), 29 U.S.C. § 1001(a). Given the fundamental congressional purpose to have the courts apply trust principles to disputes such as this, and given that the law of trusts is grounded in a strong equitable policy not to permit a trustee to benefit from his own breaches, we have no difficulty in concluding that the anti-alienation portion of the statute does not stand in the way of the remedy adopted here. A contrary interpretation would permit trustee wrongdoers to benefit from their misdeeds at the expense of those whom ERISA was designed to protect. Under such a construction, the Goldsteins, who repeatedly and indeed blatantly breached their fiduciary duties to the pension plan they created, would be allowed to evade their court-ordered responsibility to make restitution for the money they wrongfully obtained, and Plan members and their fami-

4. Further, a participant or beneficiary may make voluntary and revocable assignments, totaling not more than ten per cent of future benefit payments, once benefits are in "pay status" and provided that the voluntary assignment is not intended to defray plan costs; and benefits may be pledged as collateral to secure loans from the plan, if the plan so permits. R. Osgood, *The Law of Pensions and Profit Sharing* § 1.9.4 (1984).

lies would have to watch their pension monies once again disappear into the Goldsteins' pockets.

The Goldsteins argue that to allow an offset under the circumstances of this case would frustrate the protective purposes of ERISA's anti-alienation rule.[5] In the first place, an offset here creates no risk of interference with ongoing Plan operations, since the Plan will cease operating in any event. Moreover, the Goldsteins will not be unfairly deprived of anticipated retirement benefits, since the offset operates as if they were receiving the full amount of benefits they would have received had the Plan had not been depleted by their wrongdoing.[6] Finally, as indicated, the purpose of ERISA's anti-alienation provision—to protect plan beneficiaries by ensuring that plan assets are used only for payment of benefits—would be undermined, not advanced, by an interpretation that prohibited offset under these circumstances. The broad equitable remedies authorized by ERISA against fiduciaries who wrongfully deplete plan assets to the detriment of beneficiaries can best—perhaps only—be effectuated here by applying the traditional trust remedy of an offset.

## IV

On July 6, 1984, the District Court granted summary judgment in favor of the Profit Sharing Plan, under the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. §§ 1961 *et seq.* (1982), and awarded the Plan treble damages against Bernard Goldstein in the amount of $1,995,642.76. Appellant Bernard Gold-

stein's challenge to this RICO judgment can be disposed of briefly.

■ First. Appellant argues that he may not be found liable in a civil RICO action without a prior criminal conviction and a separate racketeering injury (other than an injury flowing from the predicate acts). Suffice it to say that appellant's theory was rejected by the Supreme Court's recent decision in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).[7]

■ Second. Appellant contends next that the District Court erred by applying findings of fact made under ERISA to the RICO claim, one that thus arose under a different statute. The foundation for this argument is difficult at best to make out, and even more difficult to accept. Bernard Goldstein admitted to making transfers of Plan assets with full knowledge that those transfers were illegal. Such an admission supports not only a finding of a violation of ERISA duties but also a violation of 18 U.S.C. § 664, the statutory predicate for appellant's RICO violation.[8] That statute prohibits "an intentional breach of special fiduciary duties imposed by other regulatory statutes or governing instruments." The same facts underlie both claims, and the same findings of fact may be applied to both.

■ Third. Appellant also argues that summary judgment was improperly granted because he was denied a jury trial on the issue of intent. This argument is equally meritless. Although state of mind is usually a question for the jury, this does not preclude a court from finding intent, on

---

5. The purpose of that provision is "to protect a person and those dependent on him from the claim of creditors." *Cartledge v. Miller,* 457 F.Supp. 1146, 1156 (S.D.N.Y.1978).

6. The amount is merely credited against their judgment debt to the Plan.

7. The *Sedima* court said that it could:
   find no support in the statute's history, its language, or considerations of policy for a requirement that a private treble damages action under § 1964(c) can proceed only against a defendant who has already been criminally convicted. To the contrary, every indication

is that no such requirement exists. Accordingly, the fact that Imrex and the individual defendants have not been convicted under RICO or the federal mail and wire fraud statutes does not bar Sedima's action.
*Id.* at ——; 105 S.Ct. at 3284. Similarly, the *Sedima* court held that there is no requirement that a private plaintiff establish a distinct "racketeering injury". *Id.* at ——, 105 S.Ct. at 3285.

8. RICO, at 18 U.S.C. § 1961(1), defines "racketeering activity" as the commission of one of 41 federal and state crimes, including embezzlement from pension and welfare funds under 18 U.S.C. § 664.

summary judgment, where that intent "may be inferred from objective facts." *See, e.g., Washington Post Co. v. Keogh,* 365 F.2d 965, 967–68 (D.C.Cir.1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).

Fourth, appellant challenges the District Court's determination of liability, which included a trebling of damages, to over $1.9 million, pursuant to RICO. Appellant asserts that, in fact, he owes only $50,000, and he claims that an award above that amount constituted an abuse of discretion. No support or justification whatever are offered for this bare conclusory statement. In sum, the District Court's application of RICO was proper in all respects.

For the reasons stated, the judgment of the District Court is

*Affirmed.*