**Donald CARSON and Peggy Carson, Plaintiffs,**

v.

**LOCAL 1588, INTERNATIONAL LONG-SHOREMEN'S ASSOCIATION, its Officers, Executive Board and Trustees et al., Defendants.**

**No. 90 Civ. 5618 (LBS).**

United States District Court, S.D. New York.

Aug. 1, 1991.

Frederic J. Gross, Mount Ephraim, N.J., for plaintiffs.

Schnneider, Cohen, Solomon, Leder & Montalbano (Edward A. Cohen, David Grossman, of counsel), Cranford, N.J., for defendant Local 1588, et al.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Chad Vignola, Ping Moy, of counsel), New York City.

## OPINION

SAND, District Judge.

Plaintiff Donald Carson was the business agent and later the elected secretary-treasurer of defendant Local 1588. Local 1588 is a small union with a membership today of less than 300 workers, primarily from the cargo and shipping industries, and assets worth approximately $176,000. Carson was the only full time officer employed by the union for the entirety of the approximately fifteen years he served. In 1988 Carson was indicted and convicted on a variety of criminal charges and left his position at Local 1588. The present motion involves Carson's right to receive a pension from Local 1588 under relevant portions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. (1988). In this case, which is consolidated with *United States v. Local 1804–1, et al.*, Carson moves for summary judgment under Fed.R.Civ.P. 56(c). For the reasons discussed below, Carson's motion for summary judgment is denied.

## I.  FACTS

Donald Carson's involvement with Local 1588 began in the mid–1970's and continued until 1988. In 1972, shortly before Carson's tenure began, Local 1588 adopted a Constitution and By–Laws. Article IX.E of the 1972 Constitution and By–Laws provided in pertinent part:

> All elected officers and Business Agents who have served twelve (12) uninterrupted years of service to the Local Union shall receive a pension until their demise from the Local Union of forty (40%) per cent of their last year's base pay.... After [death], half of his pension goes to his widow until she remarries or dies.

*See* Exhibit D of Appendix to Defendant's Brief in Opposition to the Motion for Summary Judgment ("Defendant's Brief"). In 1979, Local 1588 amended its Constitution and By–Laws but did not alter the original pension provisions. *See* Exhibit E of Appendix to Defendant's Brief. After Carson was convicted on the criminal charges he became disqualified by federal law from holding any position as an officer or employee of any labor union and resigned his position at Local 1588.

After leaving Local 1588, Carson made an application for a pension under the provisions of Article IX.E of the 1979 Constitution and By–Laws. Initially, Local 1588 granted Carson's application and began paying him a monthly pension of $1,387.67. In 1989 and early 1990, after having paid

approximately $9,280.00, Local 1588 ceased to provide Carson with any pension payments after concluding that the payments were not proper. *See* Exhibit A of Declaration of Frederic J. Gross in Support of Plaintiff's Motion for Summary Judgment.

Carson, thereafter, filed a lawsuit in the District of New Jersey seeking to compel Local 1588, its officers, executive board, and trustees to resume paying the $1,387.67 monthly pension, and to guarantee that upon his demise payments would be made at half the rate to his wife, Peggy Carson. Local 1588 obtained a stay in the New Jersey action pending the outcome of a motion to consolidate this case with *U.S.A. v. Local 1804–1, et al.*, 90 Civ. 963 (LBS), in which Donald Carson is a named defendant. This Court granted the consolidation of the cases and the defendants filed an Answer and Counterclaim, which subsequently has been amended.

## II. DISCUSSION

### A. *Applicability of ERISA to Top–Hat Pensions*

Donald Carson moves for summary judgment claiming that Local 1588 promised him a pension, began payment of its obligation and presently is illegally withholding payments due. Summary judgment may be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating "the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). In determining whether there is a genuine factual issue, a court must resolve all ambiguities and draw all inferences against the moving

party. *United States v. Diebold Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *see also* Advisory Committee Notes to the 1963 Amendments to Rule 56.

The fundamental question on this motion is the applicability of various provisions of the ERISA statutory scheme. Congress enacted ERISA to protect certain employees from abuses in the administration and investment of private retirement plans and employee welfare plans. In essence, ERISA establishes minimum standards for the vesting of benefits, funding of plans, overseeing fiduciary responsibilities, reporting to the government and making disclosures to participants. *See generally* H.R.Rep. No. 93–533, 93rd Cong.2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639; *see also Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir.1982) (en banc). Yet, the ERISA framework does not include in its protection all retirement arrangements nor do all provisions of the statute apply equally to each covered plan.

In order for ERISA protection to attach there must be a pension plan, as defined under ERISA.[1] At oral argument there was extensive discussion about whether Local 1588 had actually established a pension plan. Disagreement existed over whether the pension provisions in the 1972 and 1979 Constitutions and By–Laws, which have the same language, are self-executing or require the ratification of the union membership. Local 1588 was given two weeks to locate documents that were seized by the United States government in connection with the *U.S.A. v. Local 1804–1* case that allegedly prove that Article IX(E) of the 1979 Constitution and By–Laws was not self-executing.[2] In a letter dated April

---

1. The terms "employee welfare benefit plan" and "pension plan" mean:

   any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program—
   (i) provides retirement to employees, or

   (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

   regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. 29 U.S.C. § 1002(2)(A).

2. The documents allegedly consist of all of the minutes of the meetings of Local 1588 and its

22, 1991, Local 1588 stated it was unable to locate the relevant documents and withdrew its argument that Article IX(E) was not ratified and approved. Consequently, Local 1588 has conceded that a pension plan was established, as defined under ERISA.[3]

■ The next question is what type of plan was established, and consequently, which provisions of ERISA apply. There is no dispute among the parties that Article IX(E) is a "top-hat" pension plan, which is defined under ERISA as:

> "[a plan] which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."

29 U.S.C. § 1081(a)(3). At issue is the scope of the non-forfeiture and non-alienation provisions of ERISA and their applicability to the Local 1588 top-hat pension plan. See 29 U.S.C. §§ 1051–61. In general, the ERISA scheme staunchly protects employees by providing that non-forfeiture and non-alienation rules apply to all covered employer pension plans.[4] It is only in a few specifically enumerated instances that a pension plan is exempt from non-forfeiture and non-alienation rules. The top-hat pension is one of the listed exemptions. See 29 U.S.C. § 1051(2).[5] As a result, the Court concludes that the non-forfeiture and non-alienation rules do not apply to this case.

Even assuming that the non-forfeiture and non-alienation provisions of ERISA are inapplicable to the Article IX(E) pension plan, there is still a question as to what legal significance attaches to this exemption. Presumably, when the strict non-forfeiture and non-alienation principles surrounding ERISA are not applicable, a pension benefit is forfeitable. Yet the statute is silent as to what must be proven, if anything, before a court may conclude that a particular top hat, or other exempt pension plan, should be forfeited. The question in this case is whether Carson's top-hat pension is subject to forfeiture based on alleged violations of portions of ERISA by Local 1588 while Carson managed the union, or whether some protection against forfeiture continues since even top-hat pensions are covered by the ERISA scheme, which is generally protective of employee pensions. Resolution of this difficult question requires some analysis of other portions of ERISA and a review of the case law on the non-forfeiture and non-alienation provisions of ERISA.

While Congress sought to give some protection to top-hat pension plans, which apply to top management and other highly compensated employees, the comprehensive ERISA framework is aimed primarily at the rank and file employee. This orientation toward lower echelon employees is well documented in the statutory language and legislative history of ERISA. As a general rule, under ERISA, employers may not deny payments under a pension plan to employees (non-forfeiture and non-alienation provisions §§ 1051–1061); they must fund pension plans which exist as separate and distinct legal entities from the employ-

---

executive board which covered the adoption of Article IX(E) and additional correspondence on the subject.

3. Also in its April 22, 1991 letter, Local 1588 stated that it no longer contends that Carson's receipt of an annuity from the Union Labor Life Insurance Company estops him from receiving an Article IX(E) pension, or provides the basis for a set-off against that pension. Therefore, only the ERISA claims remain before the Court.

4. 29 U.S.C. § 1056(d)(1), the non-alienation provision, states "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." The non-forfeiture provision, 29 U.S.C. § 1053(a), declares that

"[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable" if the employee meets the statutory age and years of service requirement. There is no suggestion in this case that Carson fails to satisfy the age or years of service requirement.

5. As 29 U.S.C. § 1051 states, in pertinent part: "This part [i.e. involving non-forfeiture and non-alienation] shall apply to any employee benefit plan ... other than— ...
(2) a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees ..."

er's business (funding coverage §§ 1081–1086); and they must meet certain minimum fiduciary duties (fiduciary responsibilities §§ 1101–1114) and report and disclose details about the pension plan to beneficiaries and the public (report and disclosure §§ 1021–1031). In short, these provisions are quite protective and courts have only in rare instances granted exceptions based on equitable principles. In contrast to the above, top-hat pension plans are exempt from all of these ERISA requirements with the exception of the reporting and disclosure provisions.

■ Based on the different treatment accorded top-hat pension plans by the ERISA framework and allegations that Carson twice breached his fiduciary duties, Local 1588 urges that Carson's pension should be forfeited. First, Local 1588 argues that Carson failed to comply with the mandated disclosure and reporting provisions of ERISA as required of those responsible for managing top-hat pensions. Second, they allege that Carson caused injury to Local 1588's pension fund based on the conduct for which he was criminally convicted in 1988. Local 1588 urges that, since the non-forfeiture and non-alienation provisions of ERISA do not apply, either of these claims, if proven, can estop Carson from receiving a pension.[6] We agree. While this conclusion is not reached without some reservation, any other reading of the non-forfeiture and non-alienation provisions would make superfluous the statutory language by which Congress explicitly exempts top-hat pension plans from this portion of ERISA.

While the case law on the relevant portions of ERISA is instructive, it is not determinative. Unlike the facts here, most of the cases involve situations where the pension plan is a separate legal entity to which the non-forfeiture and non-alienation provisions apply. The first line of cases involve situations where an employee commits a fraud against the employer. In a recent case the Supreme Court considered whether a rank and file employee who defrauds or is convicted of criminal conduct against his union may be denied his benefits as a result of his conduct. The Court held that in the case of a pension plan, funded by the union but incorporated as a separate legal entity, which is subject to the non-forfeiture and non-alienation provisions of ERISA, it would be "[in]appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal conduct—to ERISA's prohibition on the assignment or alienation of pension benefits." *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990). In reaching this conclusion, however, the Court left open the possibility of allowing equitable relief in a case where the pensioner defrauded the pension plan itself. *Id.*

The second set of cases relevant to this action involve facts where a pensioner has defrauded or breached a fiduciary duty to a pension plan itself. A number of courts, both before and after *Guidry* have allowed equitable relief in these instances. *See Crawford v. LaBoucherie Bernard, Ltd.*, 815 F.2d 117, 119 (D.C.Cir.1987) (where party has breached his fiduciary duty courts

---

**6.** Although Congress did exempt top-hat pension plans from certain non-forfeiture provisions of ERISA, it did not explicitly give a union or employer a cause of action by which to seek forfeiture or move to garnish a manager's pension benefits. A question arises whether a private right of action may be implied, based on the statutory exemptions for certain pensions of "highly compensated" employees. In § 1109 of ERISA, Congress appears to create a right of action in language that states, "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this *subchapter* ... shall be subject to such other eq-

uitable or remedial relief as the court may deem appropriate ..." (emphasis added). Although the language refers to the subchapter, which includes the non-forfeiture and non-alienation provisions, the provision is located in the fiduciary responsibilities section of the statute, which is a portion of ERISA from which top-hat pensions are exempted. However, Congress includes in the subchapter disclosure and reporting requirements which do apply to top-hat pensions. The Court concludes that under either § 1109 or under an implied right of action, it is appropriate to deem equitable or remedial relief to be an available remedy in this case.

have broad authority under ERISA to fashion remedies for redressing any breach not withstanding anti-alienation provisions of ERISA); *Pension Benefit Guarantee Corp. v. Solmsen*, 743 F.Supp. 125, 129 (E.D.N.Y.1990) (remedy of off-set in fiduciary breach cases has been recognized as narrow exception to anti-alienation provisions); *But see Herberger v. Shanbaum*, 897 F.2d 801, 804 (5th Cir.1990) (no off-set remedy applied to a third party who participated in the fiduciary breach). Still, unlike the circumstances present here, in each of these cases the pension plans were separate entities subject to the non-forfeiture and non-alienation provisions of ERISA. Consequently, pensioners were subject to the full panoply of ERISA protection. Even so, the courts held that ERISA does not prohibit equitable exceptions in some circumstances.

Neither these cases nor *Guidry* are entirely dispositive on the issues raised in this action. No prior case addresses the question of forfeiture of a top-hat pension plan, which plans are by definition not separately funded. *See* 29 U.S.C. § 1081(a)(3). Nonetheless, this Court concludes that this action is closer analytically to the cases involving fraud to the pension plan itself. *See Crawford*, 815 F.2d at 119; *Solmsen*, 743 F.Supp. at 129. Since the top-hat pension plan is not a funded entity separate from the union treasury, the fund of the union and the fund of the pension plan are one and the same. Any breach of fiduciary duty committed by Carson that causes a significant loss to Local 1588 is by definition a breach to the pension fund. This is due in large part to the fact that the assets of Local 1588 are extremely modest and any significant loss to Local 1588 impacts on the financial ability of the pension plan to provide retirement benefits to future officers. If the cases above have allowed exceptions to the statutory scheme to remedy wrongs committed by individuals sub-

ject to plans afforded the fully array of ERISA protection, then *a fortiori* Carson's top-hat pension plan must also be subject to equitable principles of law, such as estoppel.

In this regard, there remain a number of material issues of fact which are inappropriate for determination on a motion for summary judgment. Carson, as the moving party, has yet to show that even though he was a high ranking officer in the union with the title of secretary-treasurer he had no fiduciary duty to the pension plan. Even if he had a duty, there is also a question of fact as to whether he breached any fiduciary responsibility to the plan. Local 1588 alleges that he failed to meet the ERISA reporting and disclosure requirements, and Carson has not yet shown that the Local 1588 accountant, not he, was responsible for this task. Moreover, there are questions of fact as to whether the failure to provide the union members and government with the pension information caused significant fiscal harm to Local 1588 such that application of an equitable remedy is appropriate. Based on this Court's reading of the law and the numerous issues of material fact, Carson's motion for summary judgment is denied.[7]

### III. Conclusion

Carson's motion for summary judgment is denied. The parties are to advise the Court within three weeks, the dates by which all discovery will be completed, a pre-trial order will be delivered to the Court and when the parties will be available and ready for trial.

SO ORDERED.

---

7. Local 1588 urges that Carson should be required to disgorge any pension payments he has received to date if his pension is forfeited. Since Local 1588 has not yet proven that Carson does in fact have a fiduciary duty, has breached that duty, has in some regard caused harm to Local 1588 and as such is subject to forfeiture, this Court need not address at this time the parameters of all available equitable remedies. Until such time as Carson's culpability has been established it is premature to consider the question of what equitable remedy, if any, is appropriate.