**Robert J. COAR, Plaintiff,**

v.

**Joseph KAZIMIR, et al., Defendants.**

**Civ. A. No. 91–3116 (MTB).**

United States District Court,
D. New Jersey.

May 12, 1992.

---

Hayden, Perle and Silber, Weehawken, N.J. by Michael R. Perle, for plaintiff.

Wilentz, Goldman & Spitzer, Woodbridge, N.J. by Roger B. Kaplan, for defendants.

OPINION

BARRY, District Judge.

I. Introduction

Plaintiff Robert J. Coar has brought this action against defendants Joseph Kazimir, Rocco Morongello, William Levine, Donato DeSanti, and Robert Dudik, in their capacities as trustees of the Pension Fund of Mid–Jersey Trucking Local 701 ("the Fund"), and against the Fund itself. Among the relief Coar seeks is a declaration that defendants' actions in withholding his vested pension benefits and applying them as a set-off to his liability to the Fund violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.;* an injunction preventing further withholding of his benefits; and

damages equal to the amount of pension benefits heretofore withheld.[1] *See* Amended Complaint ¶ 18. Defendants have counterclaimed seeking a declaratory judgment that their withholding of Coar's pension benefits because of his breach of fiduciary duty was permitted by ERISA. Answer to Amended Complaint ¶ 21. Presently before the court are the parties' cross-motions for summary judgment on the issue of whether defendants could withhold Coar's pension benefits and apply them as a set-off to his liability. For the reasons which follow, it is clear that they could not.

II. Factual Background

The facts underlying this action are complex and need only be summarized briefly here.[2] Coar was one of two lifetime trustees of the Fund. In 1982, he and his co-trustee, Frank Scotto, entered into a contract on behalf of the Fund under which the Fund agreed to transfer $20 million for a period of thirty years to Omni Funding Group ("Omni"), a Florida-based mortgage company owned by Joseph Higgins. *Id.* at 140–141. In exchange for directing this investment, Coar and Scotto, along with Fund general counsel Kenneth Zauber, solicited kickbacks from Higgins and his partner in the scheme, David Friedland, former general counsel to the Fund. *Id.* at 153. In 1987, Coar, Scotto, and Zauber were convicted of mail and wire fraud and conspiracy to receive kickbacks in violation of the Racketeering Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d). Friedland, also named in the indictment, became a fugitive and, upon his arrest, pleaded guilty. Coar's conviction for conspiracy to receive kickbacks was affirmed on appeal, although his convictions for mail and wire fraud were vacated because the government had not proved that the Fund had suffered a money or property loss. He served 18 months in prison and has since been released.

The actions of Coar and his co-conspirators also gave rise to a civil action when the Fund brought claims including, *inter*

---

1. In addition, Coar seeks interest on the benefits withheld from him and all parties seek costs and counsel fees.

2. For a more detailed factual recitation, *see* *United States v. Zauber,* 857 F.2d 137 (3d Cir. 1988) (in banc).

*alia,* a claim for breach of fiduciary duty owed to the Fund in violation of ERISA and civil RICO. *Pension Fund–Mid Jersey Trucking Industry Local 701, et al. v. Omni Funding Group, Inc.,* No. 84–4332(GEB). On September 13, 1990, the Hon. Garrett E. Brown granted partial summary judgment as to liability only against Coar, Zauber, Friedland, Scotto, Higgins and Omni on, among other things, that count of the complaint alleging breach of fiduciary duty under ERISA. Subsequently, following a damage hearing, Judge Brown entered judgment against those defendants finding them to be jointly and severally liable to the Fund in the aggregate amount of $122,143,548.00. *See* Second Supplemental Affidavit of Roger B. Kaplan (hereinafter "Kaplan Second Suppl. Aff.), Exh. Q and R.[3]

This action arises out of defendants' decision, in April, 1991, to withhold pension benefits which Coar had been receiving since 1982 and apply them as a set-off for the damages for which he was liable to the

Fund as the result of his breach of fiduciary duty. *See* Letter dated April 16, 1991 from Frederic Becker to Robert Coar, Affidavit of Roger Kaplan, dated February 27, 1992 (hereinafter "Kaplan Aff."), Exh. I: Defendants' decision came after Coar's liability to the Fund had been established in the civil case, but before there had been a judgment reflecting the monetary loss suffered by the Fund and, in particular, the loss to the Fund attributable to Coar's breach of fiduciary duty, a fact to which Coar attributes much significance. *See* n. 7, *infra.* It is not disputed that Coar was a fiduciary who owed a duty to the Fund and breached that duty. Neither is it seriously disputed that the Fund sustained a loss as a result of the kickback scheme in which Coar was a principal player.[4]

## III. Discussion

■ Defendants claim that they were entitled to withhold Coar's pension benefits by virtue of section 409(a) of ERISA, 29 U.S.C. § 1109(a).[5] Essentially, section

---

**3.** Findings of fact and conclusions of law were issued on March 19, 1992. *See* Kaplan Second Suppl. Aff., Exh. Q. Judgment was entered on April 2, 1992. Coar and codefendants Zauber, Friedland, Scotto, Higgins and Omni were found jointly and severally liable to the Fund in the amount of $25,535,887 for ERISA violations and $96,607,661 for RICO violations. *See* Kaplan Second Suppl. Aff., Exh. R.

**4.** The parties differ as to whether there is an issue properly before the court concerning the Fund's construction or interpretation and application of the Plan and Trust Agreement. Defendants claim that Coar cannot be heard to challenge the Fund's construction or interpretation of the Plan and Trust Agreement because he has not exhausted his administrative remedies. Coar takes issue with this claim, contending that not only is it proper that arguments be heard with regard to the Fund's construction and interpretation of the Plan and Trust Agreement, but that the inquiry into the basis for defendants' actions must be limited to the facts as set forth in the April 16, 1991 letter from the Fund trustees to Coar informing him that his pension benefits would be applied to his liability to the Fund. *See* Kaplan Aff., Exh. I. Moreover, the parties disagree as to the effect of their March 6, 1992 stipulation, which states somewhat cryptically that

> plaintiff does not and will not dispute that, at the time the defendant trustees of the Pension Fund ... made their decision in April 1991 to · withhold all further pension benefits from

plaintiff, the defendant trustees had before them substantial evidence that, during 1983 and 1984, the plaintiff ... received substantial kickbacks from David Friedland in connection with the $20 million investment by the Pension Fund in 1982 with Omni Funding Group, Inc., and plaintiff does not and will not dispute such evidence in this case.

Stipulation, dated March 6, 1992 (hereinafter "Stipulation") at 1.

These differences may well present issues which could be substantial, both legally and factually. However, because the propriety of alienation or forfeiture of pension fund benefits can be resolved as a matter of law, these issues need not be addressed.

**5.** Section 409(a) of ERISA provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a). In addition, defendants cite as a basis for their counterclaim section

409(a) renders a person who breaches a fiduciary duty to a pension fund personally liable for losses caused by or profits earned from such breach and subjects him or her "to such other equitable or remedial relief as the court may deem appropriate...." 29 U.S.C. § 1109(a). Coar, on the other hand, contends that defendants' action violated both the anti-alienation provision of section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), and ERISA's anti-forfeiture provision, section 203(a), 29 U.S.C. § 1053(a).[6] His primary argument is that the withholding of pension benefits without a money judgment conclusively establishing a "loss" to the Fund, although couched in terms of a set-off, was effectively a forfeiture. Thus, he contends, the court's analysis of whether his pension benefits were properly or improperly withheld should focus on the anti-forfeiture provision of section 203 of ERISA rather than the statute's anti-alienation provision, although that provision, he claims, was violated as well.[7] Resolution of these competing contentions requires a determination of the nature of the interplay between ERISA's remedial provisions relating to breaches of fiduciary duty and its anti-alienation and anti-forfeiture provisions.

## A. Alienation versus Forfeiture

Coar's attempt to convince this court that the Fund terminated his benefits "as further punishment for the breach of fiduciary duty for which he was convicted criminally," therefore implicating ERISA's anti-forfeiture provision rather than its anti-

alienation provision, must fail. Pl. Br. at 17. The March 16, 1991 letter to Coar stated quite clearly that his pension benefits would be withheld "to satisfy [his] liabilities to the Pension Fund for [his] breaches of fiduciary duty...." It is plain at least from the language used by defendants that they determined to withhold the pension benefits as a set-off against Coar's liability to the Fund and not to permanently deny benefits as punishment for his criminal actions.

Winer v. Edison Brothers Stores Pension Plan, 593 F.2d 307, 312 (8th Cir.1979), which Coar cites in support of his position, is inapposite. Winer involved a forfeiture of pension fund benefits by operation of a "bad boy" clause which provided for the automatic disqualification from benefits of any plan member who had been dishonest with respect to the assets of or in a transaction on behalf of the corporation. The Fund in Winer made no claim of set-off vis-a-vis any liability to the Fund; rather, it claimed a forfeiture of the very nature sought to be eradicated by section 203(a) of ERISA, 29 U.S.C. § 1053(a). See Winer, 593 F.2d at 311 (citing the legislative history of the anti-forfeiture provision of ERISA). Coar cites no further authority for his invocation of ERISA's anti-forfeiture provision and, indeed, there appears to be none. Because the intention of defendants in withholding Coar's benefits was clearly to offset his liability to the Fund, and wholly aside from whether such set-off was or was not legally supportable at that time, the relevant section of ERISA in de-

502(a)(3) of ERISA, which provides for civil enforcement of the Act's terms:
A civil action may be brought—
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan...."
29 U.S.C. § 1132(a)(3).

6. Section 206(d)(1) provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Section 203(a) provides that "[e]ach pension plan shall provide that an employee's right to his normal retire-

ment benefit is nonforfeitable upon the attainment of normal retirement age...." 29 U.S.C. § 1053(a).

7. Coar makes much of the fact that there had been no adjudication of the amount of loss to the Fund at the time his benefits were withheld. Defendants argue, in response, that a money judgment was unnecessary because substantial evidence of kickbacks was before them at the time they acted and that was all that was required. As will become clear, it is unnecessary to decide whether a money judgment was required prior to defendants doing as they did. In any event, there now is such a judgment and Coar's reliance on the fact that there was none in April, 1991 would not take him very far.

termining the propriety of the Fund's actions must be section 206(d)(1), 29 U.S.C. § 1056(d)(1), the anti-alienation provision.

### B. Withholding Pension Benefits to Satisfy a Liability to the Fund for Breach of Fiduciary Duty

■ Having determined that defendants' action is appropriately reviewed in light of ERISA's anti-alienation provision, the court must determine whether the remedy of set-off, comprehended within the "such other equitable relief as the court may deem appropriate" language of section 409(a), acts as an exception to the general prohibition against the alienation of such benefits.[8] In this regard, the Supreme Court's opinion in *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) is highly instructive.

As an initial matter, it bears mention that *Guidry* expressly left open the matter now before the court. *Id.* at 365, 110 S.Ct. at 681. Because the pensioner in that case had breached a fiduciary duty to the union itself rather than to the Fund, the Court found section 409(a) inapplicable and specifically refused to decide whether the remedial provisions of 409(a) supercede the bar on alienation in section 206(d)(1). Resisting the "natural tendency to blur the distinction between a fund and its related union," the Court looked instead to section 501(b) of the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 501(b).[9]

There are similarities, however, between section 501(b) of the LMRDA and section 409(a) of ERISA, thus rendering much of *Guidry*'s reasoning and analysis apt to the instant matter. *Compare* LMRDA section 501(b), 29 U.S.C. § 501(b) ("or other appropriate relief") *with* ERISA section 409(a), 29 U.S.C. § 1109(a) ("and shall be subject to such other equitable or remedial relief as the court may deem appropriate"). And, importantly here, the Court's interpretation of section 206(d)(1) is right on point. Thus, *Guidry*'s discussion of the prohibition on the assignment or alienation of pension benefits set forth in section 206(d)(1) of ERISA is extremely important for this court's purposes.

The Court noted that section 206(d)(1) is clear and reflects a "considered … decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless) even if that decision prevents others from securing relief for the wrongs done to them." *Id.* Thus, the Court continued, courts should generally be loathe to create equitable exceptions to unqualified statutory pronouncements. *Guidry*, 493 U.S. at 376, 110 S.Ct. at 687.

> The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended *only* on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be

---

**8.** Defendants cite *Carson v. Local 1588, International Longshoremen's Ass'n*, 769 F.Supp. 141 (S.D.N.Y.1991), as support for the proposition that a plan could offset losses by withholding pension benefits upon the beneficiary's breach of fiduciary duty. While that was, in fact, the case in *Carson*, it was only because the non-forfeiture and non-alienation rules do not apply to a top-hat pension, the pension at issue in *Carson*, by virtue of the specific exemption found in 29 U.S.C. § 1051(2).

**9.** Section 501(b) of the LMRDA provides for a private right of action in federal court to recover damages or "other appropriate relief for the

benefit of the labor organization" for breaches of fiduciary duty by union officers. 29 U.S.C. § 501(b). Having found no significant difference between a writ of garnishment and a constructive trust, *see Guidry*, 493 U.S. at 372, 110 S.Ct. at 685, the Court assumed that "other appropriate relief" may authorize, under certain circumstances, the imposition of a constructive trust. *Id.* at 374, 110 S.Ct. at 686. Nevertheless, the Court was persuaded that the counterveiling interest expressed by ERISA's anti-alienation provision prevented the imposition of a constructive trust on pension benefits. *See Guidry*, 493 U.S. at 375, 110 S.Ct. at 687.

forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticality of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.

*Id.* at 376–77, 110 S.Ct. at 687–688 (emphasis in original). The Court recognized that the operation of an antigarnishment provision, like the anti-alienation provision of section 206(d)(1), will almost always seem inequitable. Despite the "natural distaste" for such a result, the Court nevertheless paid deference to the legislative policy decisions behind the anti-alienation provision and left any change in that policy to Congress. *Id.* at 377, 110 S.Ct. at 688.

*Guidry*, of course, involved reconciling two distinct statutes: the "other appropriate relief" power of the LMRDA and the anti-alienation language of ERISA. Here, the reconciliation must take place within ERISA itself with the court determining whether Congress intended that the remedial aspects of section 409(a) supersede the anti-alienation provision of section 1056(d)(1).

The District of Columbia Circuit, in its opinion in *Crawford v. La Boucherie Bernard Ltd.*, 815 F.2d 117 (D.C.Cir.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987), answered this question in the affirmative. In reaching its conclusion, the *Crawford* court noted that ERISA's anti-alienation provision is "not immutable," citing decisions in which the garnishment of pension plan benefits was permitted to satisfy family support and community property obligations of divorce decrees and to satisfy liabilities arising from an employee's criminal misconduct toward his employer. *Crawford*, 815 F.2d at 121 (citing *American Telephone and Telegraph Co. v. Merry*, 592 F.2d 118 (2d Cir.1979); *Stone v. Stone*, 450 F.Supp. 919 (N.D.Cal.1978), *aff'd*, 632 F.2d 740 (9th Cir. 1980), *cert. denied sub nom. Seafarers International Union, Pacific District—Pacific Maritime Association Pension Plan v. Stone*, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981); and *St. Paul Fire and Marine Insurance Co. v. Cox*, 752 F.2d 550 (11th Cir.1985)).

This conclusion, however, has been vitiated not only by *Guidry* itself, which held that it is not for a court to declare that an employee's criminal misconduct can be the basis for an offset, but by the passage of section 104(a) of the Retirement Equity Act of 1984, 29 U.S.C. § 1056(d)(3), subsequent to the domestic relations decisions relied on by the *Crawford* court. Section 104(a) excepts certain domestic relations orders from the anti-alienation provision, and that Congress chose to do so indicates a willingness to create such policy-oriented exceptions where appropriate. Indeed, the Supreme Court noted this fact in reaching its conclusion in *Guidry* that the equitable enforcement provision of the LMRDA should not override ERISA section 1056(d)(1). *See Guidry*, 493 U.S. at 376 n. 18, 110 S.Ct. at 687 n. 18.

The precedential value of *Crawford* is, at least in this court's view, questionable in light of the Supreme Court's subsequent decision in *Guidry*. The Fifth Circuit, in *Herberger v. Shanbaum*, 897 F.2d 801 (5th Cir.1990), held, as does this court, that section 409(a) cannot override the anti-alienation provision of section 206(d)(1). The court considered *Crawford* in light of *Guidry* and determined that *Guidry* had seriously undermined much of the reasoning of the *Crawford* court. *Herberger*, 897 F.2d at 804. The court noted that the Supreme Court in *Guidry* rejected the notion, suggested in *Crawford*, that a generalized equitable exception to the anti-alienation provision is warranted by virtue of ERISA's legislative history endorsing traditional trust principles. *Id.* Instead, *Herberger* extrapolated that the Supreme Court's strict application of the anti-alienation section would lead the court to reject an exception based on section 203(a). *Id.*

This view, however, is not unanimous. A contrary view was taken by the court in *Pension Benefit Guaranty Corp. v. Solmsen*, 743 F.Supp. 125 (E.D.N.Y.1990), which, undaunted by the Supreme Court's analysis in *Guidry*, adopted the reasoning of *Crawford* and permitted a pensioner's benefits

to be used as a set-off for his liability for breach of fiduciary duty. The court, recognizing that *Guidry* had left open the question of whether section 409(a) could supersede the anti-alienation provision of ERISA, considered and rejected the reasoning of *Herberger. Solmsen,* 743 F.Supp. at 129. In addition to explicitly relying on *Crawford*'s analysis, the court opined that "common sense suggest[s] that set-off is permissible."

This reasoning, however, flies in the face the Supreme Court's teaching in *Guidry:* despite the natural distaste for permitting a beneficiary who has wronged the pension fund to collect benefits while his or her debt remains outstanding, a legislative policy determination has been made and the statute, ERISA section 206(d)(1), 29 U.S.C. § 1056(d)(1), is clear. *Guidry,* 493 U.S. at 365, 110 S.Ct. at 681. Thus, *Solmsen*'s comment that "[n]o good reason appears as to why Guaranty Corp. should have to pay benefits to a person who has wronged the Plan, and the beneficiaries of it, before he has made good the wrong" is more appropriately addressed to the legislature rather than the courts seeking to interpret the law as it now stands.[10]

### IV. Conclusion

Recognizing that *Guidry* left open the question of whether the remedial provision of ERISA section 409(a), 29 U.S.C.

§ 1109(a), can serve as an exception to the unqualified statutory language of the anti-alienation provision of ERISA section 206(d)(1), 29 U.S.C. § 1056(d)(1), this court holds that the Supreme Court's reasoning in *Guidry* counsels a strict application of the anti-alienation provision, and that defendants cannot withhold Coar's benefits and apply them as a set-off to his liability to the Fund. To echo the sentiments of the Supreme Court, while this result may be unpalatable, and it is unpalatable in this case, for Coar has hardly bathed himself in glory, it is nevertheless in accordance with the law, and any change must come from Congress rather than from the court.

Coar's motion for summary judgment will, therefore, be granted and defendants' motion will be denied. Concomitantly, Coar's motion to dismiss the counterclaim will be granted and defendants' motion for judgment on the counterclaim will be denied.[11] Counsel for Coar shall submit an order reflecting this opinion within ten days of its date.

---

10. In their attempt to distinguish *Herberger,* defendants rely on the *Solmsen* court's view of *Herberger* as a case dealing with a set-off remedy as applied to a third party who participated in the fiduciary breach of another rather than someone who himself breached a fiduciary duty. Such reliance is misplaced, for in this regard the *Solmsen* court is simply wrong. While there was a case related to and discussed in *Herberger* which dealt with the same person's (Shanbaum's) participation in the breach of fiduciary duty of another, *see McLaughlin v. Lindemann,* 853 F.2d 1307 (5th Cir.1988), the facts at issue in *Herberger* were not those. In *Herberger,* a pension beneficiary brought suit against the successors to his former employer, Shanbaum, an individual named Carp, and the Lee Optical Pension Plan, who had been the sole shareholders of the employer-corporation, to recover benefits owed to him. The pension plan settled with the beneficiary; at a later trial the court awarded plaintiff damages against Shanbaum and Carp, as well as an indemnification judgment against Shanbaum in favor of the

pension plan for Shanbaum's *direct breach of his fiduciary duty to the plan. Herberger,* 897 F.2d at 802. When this judgment proved uncollectible, the pension plan sought to withhold Shanbaum's pension benefits as a set-off for his liability to the Plan for his direct breach of fiduciary duty. *Id.* Therefore, any distinction defendants suggest based on *Herberger*'s consideration of mere participation by a third party in the breach of fiduciary duty of another is wholly illusory.

11. It follows inexorably that those benefits wrongfully withheld from Coar are to be paid to him, together with interest at the appropriate rate, and defendants are to do so within thirty days of this date. It follows, as well, that no further benefits are to be withheld as a set-off for liability for the breach of Coar's fiduciary duty to the Fund. Finally, Coar will be awarded reasonable counsel fees and costs. 29 U.S.C. § 1132. In this connection, counsel shall submit the necessary affidavit within twenty days of this date.